**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KEN MCWATTERS**, | |
| Plaintiff, | |
| v. | Civil Action No. 20-cv-1092 (TSC) |
| **BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiff Ken McWatters sued the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of a 30-minute recording which captures a nightclub fire and the surrounding events that tragically killed 100 people at a concert in West Warwick, Rhode Island in February 2003. Am. Mem. Op. at 1–2, ECF No. 22. The court previously granted in part and denied in part ATF's motion for summary judgment, denied Plaintiff's cross-motion, and remanded the matter to ATF for further findings as to segregability. *Id.* at 9. The court ordered ATF "to provide additional information as to segregability and whether the final [eight] minutes of the recording might also be exempt, and to file a renewed motion for summary judgment." *Id.* at 8.

The parties have now renewed their cross-motions for summary judgment. *See* Def.'s Renewed Mot. for Summ. J., ECF No. 29 ("ATF MSJ"); Pl.'s Renewed Mot. for Summ. J., ECF No. 30. Plaintiff also moves for reconsideration of the court's Amended Memorandum Opinion, claiming that the court overlooked controlling authority and made factual findings that are unsupported by the record. Pl.'s Mot. for Recons., ECF No. 32 ("Mot. for Recons."). For the

following reasons, the court will GRANT Defendant's renewed motion, DENY Plaintiff's

renewed cross-motion, and DENY Plaintiff's motion for reconsideration.

## I.      BACKGROUND

The court previously set forth the factual background in its Amended Memorandum

Opinion.  As relevant, more than 200 people were injured and 100 people died in a fire while

attending a concert by the band Great White at the Station nightclub in West Warwick, Rhode

Island in February 2003.  Corrected Decl. of Adam C. Siple ¶¶ 4–5, ECF No. 11-1 ("2020 Siple

Decl.").  As part of its investigation into the cause and origin of the fire, ATF recovered an audio

recording from the body of a deceased concertgoer who, in trying to record the concert,

inadvertently recorded the moments surrounding the tragedy.  *Id.* ¶¶ 6–7.  The recording was

damaged during the fire, but ATF's digital forensics professionals successfully restored the

recording as part of the agency's investigation.  *Id.* ¶ 6.  The recording is the only record

responsive to Plaintiff's FOIA request.  Am. Mem. Op. at 2.

The recording can be divided into three parts.  *Id.*  The first captures the opening

moments of the concert, in which Great White took the stage and performed for about five

minutes.  2020 Siple Decl. ¶ 7.  The second section starts with an attendee yelling "Fire!"

followed by the sounds of panic, chaos, and human suffering, including "crying, screaming, and

groaning."  *Id.*  While the concertgoer carrying the recording device is never heard speaking on

the recording, it captures his "last breaths and his struggle to stay alive within the fire."  *Id.*  The

last section starts around 22 minutes into the recording.  *Id.*  Initially, the chief of the ATF

division which processes FOIA requests declared that this final eight-minute segment did not

include "audible human sounds."  *Id.* ¶¶ 1, 7.  ATF withheld the entire recording.  *Id.* ¶¶ 8, 12.

After the court directed the agency to provide additional information as to segregability

and address "whether the final 8 minutes of the recording might also be exempt," Am. Mem. Op.

at 8, ATF "closely reviewed" the last eight-minute section to determine if any portion could be reasonably segregated, ATF MSJ, Ex. 1, Decl. of Adam C. Siple ¶ 4, ECF No. 29-3 ("2023 Siple Decl."). The same declarant, several staff members, and "a digital media professional" reviewed the eight-minute segment at issue. *Id.* On this listen, with his computer speakers set "at the highest possible volume," the declarant heard what he "believe[s] are noises associated with at least one of the human beings who perished in the fire." *Id.* ¶ 5. On "close scrutiny of the recording," the declarant could hear "faint and repetitive noises that, to [his] ears, sound like someone is breathing and gasping for air." *Id.* Other members of the division's staff and members of ATF's Digital Media Division agreed with the assessment that human sounds are audible on the first four minutes of the final eight-minute segment of the recording. *Id.* Based on that evaluation, ATF segregated and released to Plaintiff the last four minutes and seven seconds of the final segment of the recording. *Id.* ¶¶ 6–7. At Plaintiff's request, ATF later provided a non-compressed .wav file of the same portion of the recording. *Id.* ¶ 8.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hall & Assocs. v. EPA*, 956 F.3d 621, 624 (D.C. Cir. 2020). In reviewing an agency's motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. *Pavement Coatings Tech. Council v. U.S. Geological Surv.*, 995 F.3d 1014, 1021 (D.C. Cir. 2021). A court may grant summary judgment based solely on information in an agency's declarations if they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014)

(quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  The agency must demonstrate

"that it made a good faith effort to conduct a search for the requested records, using methods

which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't

of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  "Ultimately, an agency's justification for

invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of

State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotations omitted).

A court may reconsider interlocutory orders "at any time before the entry of a judgment

adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b), "as

justice requires," *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C.

Cir. 2011) (citation omitted).  Decisions in FOIA actions that grant in part and deny in part

motions for summary judgment are considered interlocutory orders subject to this "as justice

requires" reconsideration.  *Murphy v. Exec. Off. for U.S. Att'ys*, 11 F. Supp. 3d 7, 8 (D.D.C.

2014) (citation omitted).  Reconsideration may be warranted when a court has "patently

misunderstood the parties, made a decision beyond the adversarial issues presented, made an

error in failing to consider controlling decisions or data, or where a controlling or significant

change in the law has occurred." *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 192

(D.D.C. 2018) (citation omitted).  "Ultimately, the moving party has the burden to demonstrate

that reconsideration is appropriate and that harm or injustice would result if reconsideration were

denied." *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90,

96 (D.D.C. 2018) (quotation omitted).

### III.   ANALYSIS

#### A.   <u>Cross Motions for Summary Judgment</u>

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure

of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(6).  FOIA Exemption 7(C) excludes from disclosure law enforcement records that "could be reasonably expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Although the two exemptions are similar, "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."  *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quotations omitted).  Because ATF relies on both Exemptions 6 and 7(C), the court need not consider Exemption 6 separately.  *Roth v. Dep't of Just.*, 642 F.3d 675, 681 (D.C. Cir. 2017).

       i.        *ATF's Motion for Summary Judgment*

To justify withholding under Exemption 7(C) the agency must satisfy a two-part inquiry. It must first show that the recording was "compiled for law enforcement purposes."  *F.B.I. v. Abramson*, 456 U.S. 615, 622 (1982).  ATF then bears the burden of explaining why disclosure would "reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), "when balanced against the public interest in disclosure," *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 66 (D.C. Cir. 2018).  The court has already found that the recording was compiled for a law enforcement purpose and Plaintiff does not contest that holding.  Am. Mem. Op. at 4–5; Pl.'s Opp'n to Def.'s Renewed Mot. for Summ. J. and in Supp. of Pl.'s Renewed Mot. for Summ. J. at 8 n.7, ECF No. 31 ("Pl.'s MSJ").  Consequently, ATF must next demonstrate a privacy interest that might be invaded by disclosure.  *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).  If the recording implicates privacy interests, Plaintiff bears the burden of showing a public interest in disclosure that is (1) "significant" and "more specific than having the information for its own sake" and (2) that "show[s] the information is likely to advance that interest."  *Boyd v. Criminal Div. of U.S. Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007) (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  The agency still must provide the requestor "[a]ny reasonably

segregable portion of a record . . . after deletion of the portions of the record which are exempt."
5 U.S.C. § 552(b).

*Privacy interests*

ATF sufficiently described the privacy interests of the surviving family members of the deceased, who can be heard on the final segment of the recording. Family members of decedents have a right to personal privacy with respect to images and audio of their close relative's final moments. *Favish*, 541 U.S. at 170; *N.Y. Times Co. v. NASA*, 782 F. Supp. 628, 631 (D.D.C. 1991). The release of audio recordings of a "beloved family member immediately prior to that family member's death" infringes that right because it may cause additional pain, disruption to peace of mind, additional anguish, or annoyance or harassment. *NASA*, 782 F. Supp. at 631 (internal quotations omitted); *see* Am. Mem. Op. at 5. Here, ATF found "strong survivor privacy interests at stake with respect to the four minutes in which human breathing, and perhaps gasping for air, can still be discerned upon a careful review." 2023 Siple Decl. ¶ 11. The court agrees and has already determined that legitimate privacy interests would be invaded by releasing a recording of the last moments of an individual's life. Am. Mem. Op. at 6. The content of those last moments—whether voices, screams, or final breaths—does not alter this analysis.

Plaintiff challenges ATF's legal conclusion that the initial minutes of the last segment of the recording implicate privacy interests, Pl.'s MSJ at 10–12, and ATF's factual contention that sounds of human suffering are audible in the withheld section of the recording, *id.* at 4. *See also id.*, Ex. 4, Suppl. Decl. of Samuel Kincaid ¶¶ 3, 8, ECF No. 31-4 ("Suppl. Kincaid Decl.") (discussing the adequacy of ATF's audio review); Reply Mem. in Supp. of Pl.'s MSJ at 2–3, ECF No. 38. Plaintiff made similar arguments in his initial motion for summary judgment. *See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and in Supp. of Pl.'s Mot. for Summ. J. at 8, 11,

ECF No. 13 ("Pl.'s 1st MSJ").  He now cites Supreme Court and Circuit authority that he claims

requires the agency to "link the record(s) at issue" to "specifically identifiable person(s)."  Pl.'s

MSJ at 11 (citing *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S 595, 599–603 (1982) and *Arieff*

*v. U.S. Dep't of the Navy*, 712 F.2d 1462, 1467–68 (D.C. Cir. 1983)).  He argues that ATF fails

this test because it did not make "any reliable connection between the alleged non-verbal human

sounds" on the withheld segment of the recording and "any specific person(s)."  *Id.* at 12.

Although ATF is correct that the court has already rejected this argument, it will address

Plaintiff's cited authorities to explain why they do not alter the court's ruling.  Am. Mem. Op. at

6 ("The court is unaware of any authority requiring ATF to individually identify each victim

from their last moments, [and] the court does not find that ATF was required to undergo such an

analysis.").

The cases Plaintiff cites again address different exemptions and principles.  *Washington*

*Post Co.* involved a challenge to the State Department's withholding of documents under

Exemption 6.  456 U.S at 596.  The Supreme Court analyzed Exemption 6's requirement that the

withheld information be found in personnel, medical, or "similar files," and held that information

"unrelated to any particular person presumably would not satisfy the threshold test."  *Id.* at 602

n.4.  Limiting its analysis to the scope of Exemption 6's "similar files" requirement, the Court

did not consider "whether disclosure of the information would constitute a clearly unwarranted

invasion of personal privacy," much less whether the records' release "could be reasonably

expected to constitute an unwarranted invasion of personal privacy."  *Id.* at 598; 5 U.S.C.

§ 552(b)(7)(C); *see also Favish*, 541 U.S. at 165 (noting the "marked contrast" between the

language of Exemptions 6 and 7).  Exemption 7(C) has a different threshold question: whether

the recording was "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  It does not

incorporate Exemption 6's "similar files" threshold or the case law that defines it, and Plaintiff

has not pointed to any case that applies the Supreme Court's "similar files" analysis to a

withholding claim under Exemption 7(C). *Cf. Evans v. Fed. Bureau of Prisons*, 951 F.3d 578,

586–87 (D.C. Cir. 2020) (discussing inadequacy of agency affidavit to justify withholding under

Exemption 7(C) with no reference to agency's obligation to link third parties appearing in the

requested record to particular individuals).

     *Arieff* also considered withholding under Exemption 6. *See* 712 F.2d at 1464. In that

case, the requestor sought from the Navy documents that disclosed the names and amounts of

prescription drugs supplied to the office that serves the medical needs of members of the House

and Senate, among other government employees. *Id.* at 1464. The request explicitly stated that

the Navy could delete all information that would identify the ultimate recipient of the drugs. *Id.*

at 1465. The D.C. Circuit accepted the district court's finding that the records were "similar

files," but held that disclosure of the records would not constitute a "clearly unwarranted

invasion of personal privacy." *Id.* at 1466–68. The Navy could not show more than a "mere

possibility" that a particular individual's medical condition could be deduced from records

disclosing the names and quantities of prescription drugs purchased by an office that provided

services to 600 people. *Id.* at 1467–68 ("[M]erely being one of 600 persons who are entitled to

use pharmacological services that have probably prescribed a particular drug that is exclusively

used for a single ailment is not enough."). Emphasizing the language of Exemption 6 requiring a

showing that "disclosure . . . *would* constitute a clearly unwarranted invasion of personal

privacy," the Court stated that it "need not discuss how probable identification of the subject

need be in order to establish more than a 'mere possibility' and render Exemption 6 applicable."

*Id.* at 1467.

*Arieff* did not consider Exception 7(C), nor its "lower bar for withholding material." *Am. C.L. Union*, 655 F.3d at 6.  To the extent Plaintiff argues that ATF cannot establish more than a "mere possibility" of harm—a requirement also drawn from the language of Exemption 6, *see Dep't of Air Force v. Rose*, 425 U.S. 352, 380, n.19 (1976) ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.")—where ATF has not identified the individual who can be heard on the withheld minutes of the recording, the court has already addressed and rejected the argument.  Am. Mem. Op. at 6 ("ATF has met the standard of a 'mere possibility' of harm; it has identified some specific voices on the recordings, and the identi[t]ies of those who perished in the fire are known.").  While it is true that conjecture regarding a pool of some 600 people did not pass muster under Exemption 6, it is equally true that the final moments of the seven astronauts aboard the Challenger were sufficiently protected by Exhibit 6, *without* any requirement or indication that each noise on that recording be attributable to a specific astronaut.  *NASA*, 782 F. Supp. at 631–32.  Plaintiff's request is more analogous to *NASA*; there is no dispute that the individual heard on the last segment of the tape was one of 100 identified individuals who perished in the fire, and common sense indicates that a smaller number—the individual who carried the tape recorder and those in his immediate vicinity—are most likely the individuals heard on the recording.  The families of those individuals, like the families of the Challenger astronauts, are radically more likely to suffer pain upon disclosure than any of the 600 individuals in *Arieff* whose personal medical diagnoses could *not* be determined on the base of the disclosure alone.  *Id.*

Supreme Court precedent instructs that the "concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion' of that idea." *Favish*, 541 U.S. at 165

(quoting *Reps. Comm.*, 489 U.S.at 763).  For the same reasons stated in the court's Amended

Memorandum Opinion, ATF has demonstrated a privacy interest that might be invaded by

disclosure.  *Reps. Comm.*, 489 U.S.at 756; *see* Am. Mem. Op. at 5–6.

With respect to Plaintiff's challenge to ATF's audio review of the final segment and his

assertion that ATF's audio analysis "does not properly support" its conclusion that the withheld

segment contains faint sounds of human life, *see* Suppl. Kincaid Decl. ¶ 3, Plaintiff overlooks

ATF's sworn statement that at least one digital media professional also reviewed the segment

and concurred with the declarant's evaluation.  2023 Siple Decl. ¶¶ 4–5.  That statement, and

ATF's conclusion that faint human sounds are audible, is entitled to a presumption of good faith,

*SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and the court has no

reason to believe the agency's methods were unreasonable, *Oglesby*, 920 F.2d at 68.  Plaintiff

introduced no evidence of the agency's bad faith and presents no authority for his argument that

ATF was required to utilize specialized filtering or processing tools.  *Elec. Frontier Found.*, 739

F.3d at 7; *see also* Suppl. Kincaid Decl. ¶¶ 6–8.  ATF was under no obligation to use special

equipment to better hear what the agency's declarant swore he, his staff, and a digital media

professional could already hear.  *Parker v. U.S. Immigr. & Customs Enf't*, 289 F. Supp. 3d 32, 44

(D.D.C. 2017) ("An agency is not required to obtain new equipment to process a FOIA

request.").  For the reasons above, ATF has established a sufficient and significant privacy

interest in the withheld recording segment.

*Public interest*

Once the agency establishes privacy interests that could be invaded by disclosure, the

requestor bears the burden of asserting a public interest in disclosure that is (1) "significant" and

"more specific than having the information for its own sake," and (2) that "show[s] the

information is likely to advance that interest." *Boyd*, 475 F.3d at 387 (quoting *Favish*, 541 U.S. at 172).  Plaintiff filed a supplemental declaration re-stating the public interest he offered in his previous motion.  *See* Pl.'s MSJ at 13 n.9 (noting the public interest "referenced above was set forth in Plaintiff's initial declaration filed in this action . . . which Plaintiff has clarified in his most recent declaration").  He seeks the recording to "evaluate" ATF's "investigation and resulting report" of the Station Nightclub fire "in order to facilitate better fire investigations and fire safety recommendations."  Pl.'s MSJ at 13; *see also id.*, Ex. 2, Third Decl. of Kenneth McWatters ¶ 2, ECF No. 31-2 ("3rd McWatters Decl.").  Plaintiff also submitted a declaration by a "highly respected fire investigation expert[]," Dr. Vytenis Babrauskas, who was previously employed by the National Institute for Standards and Technology ("NIST") as a fire prevention engineer.  3rd McWatters Decl. ¶ 3.  Dr. Babrauskas states his belief that significant public interests support release of "the complete audio file" of the fire in order to "assist with additional public oversight of the investigation of this incident[] by allowing professional analysis of the only complete audio time line of that fire . . . ."  Pl.'s MSJ, Ex. 3, Decl. of Vytenis Babrauskas, Ph.D. ¶ 4, ECF No. 31-3 ("Babrauskas Decl.").

Neither declarant states a public interest more specific than having the information for its own sake.  *Boyd*, 475 F.3d at 387; *see also* Am. Mem. Op. at 7–8.  In the same way that the voice inflections and background noises contained on the recording of the Challenger shuttle's last minutes did not "contribute significantly" to the public's understanding of NASA's operations or conduct, the moments captured on the first half of the withheld segment will not contribute significantly to understanding ATF's investigation.  *See NASA*, 782 F. Supp. at 633.  Plaintiff's declaration suggests that he expects to find something in the tape that ATF missed.  3rd McWatters Decl. ¶ 4 (alleging the audio file was never "conveyed from" ATF to NIST and

that the recording "contains the only continuous record of the complete fire incident, and was not

used by the applicable federal agency comprehensive report of this incident."). But Plaintiff's

speculation is insufficient to state a significant public interest—on his theory, any law

enforcement record would serve the public interest because it, too, would allow the public to

"evaluate" an investigation and resulting report. Even assuming Plaintiff's speculations were

correct, he acknowledges that "a record which captures the complete and continuous fire incident

from start to finish has a significantly higher value for a comprehensive investigation and

analysis of this fire incident than more limited 'snap shots' of random portions of a fire

incident." *Id.* ¶ 4 n.1; *see also* Babrauskas Decl. ¶ 4. But by that logic, the "snapshot" provided

by the four-minute segment he seeks would not serve the public interest potentially found in a

"complete record" of the fire.

Because McWatters has again failed to demonstrate a public interest in the recording's

disclosure, the court "need not linger over the balance; something, even a modest privacy

interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d

873, 879 (D.C. Cir. 1989). The court thus finds that ATF has properly withheld the first four

minutes of the last segment of the recording under FOIA Exemption 7(C) and will grant

summary judgment to ATF.

    ii.        *Plaintiff's Motion for Summary Judgment*

Plaintiff's cross-motion raises the same arguments addressed above, and the court will

deny it for the same reasons. Plaintiff argues that ATF did not show that release of the exempt

material would result in foreseeable harm under the FOIA Improvement Act of 2016. Pl.'s MSJ

at 14. That provision allows an agency to withhold information "only if the agency reasonably

foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C.

§ 552(a)(8)(A)(i)(I). But the "breathing and gasping sounds" in the withheld portion of the final

segment are "no different than those ATF's declarant heard" in the second segment of the recording, and the court has already found that both raise significant privacy interests and would cause reasonably foreseeable harm to the interests protected by Exemption 7(C). *Supra* at 6. ATF's declarant stated that the withheld portion of the final segment of the recording "would bring renewed anguish and unnecessary suffering to the surviving family members of the victims." 2023 Siple Decl. ¶ 11. This specific harm is sufficient where the recording and the tragic fire it captures occurred approximately 20 years ago, and thus many of the family members of the deceased are likely still alive and would suffer from its release. *See Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259–60 (D.D.C. 2020) (discussing context-based inquiry).

ATF has satisfied its obligation to release all non-exempt records, *see* 2023 Siple Decl. ¶¶ 6–8, and the court will deny Plaintiff's motion for the reasons stated above.

**B.     Plaintiff's Motion for Reconsideration**

Plaintiff makes three arguments in favor of reconsideration. First, that "clear controlling authority" by the U.S. Supreme Court and the D.C. Circuit prevents the court from finding a privacy interest protected by FOIA "where the agency has not provided any (non-speculative) evidence connecting the withheld material to specifically identified persons." Mot. for Recons. at 2–3. Second, that the court made factual findings unsupported by the record where it held Plaintiff "presented 'no facts' to support his 'public interest'" in obtaining the requested recording. *Id.* at 4. Third, Plaintiff seeks reconsideration of the "factual finding[]" that ATF established more than a "mere possibility" of unwarranted harm to the surviving family members of the individuals heard on the recording. *Id.* at 5.

"[M]otions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or

arguments that could have been advanced earlier." *Robinson*, 296 F. Supp. 3d at 192–93.  With

respect to his first ground for reconsideration, Plaintiff acknowledges that he "is not presenting

any new issues which were not raised in his prior filings," but rather that he was "unaware, at the

time of his prior briefings," of "controlling authority."  Mot. for Recons. at 2 n.1.  But Plaintiff

raised and the court considered the case law Plaintiff relies on both here and in his renewed

motion for summary judgment.  *See* Am. Mem. Op. at 6; Pl.'s Reply Mem. in Supp. of Pl.'s Mot.

for Recons. at 2, ECF No. 37 ("Recons. Reply"); *see also* Pl.'s 1st MSJ at 2 n.1; Pl.'s Reply in

Supp. of Pl.'s 1st MSJ at 8.  Justice does not require reconsideration where the same argument

has been raised and rejected.  *Capitol Sprinkler*, 630 F.3d at 227 (no abuse of discretion where

movant raised only arguments "already rejected on the merits"); *McLaughlin v. Holder*, 864 F.

Supp. 2d 134, 141 (D.D.C. 2012) (same).  And the court did not commit legal error or

contravene binding authority for the reasons explained at length above.  *Supra* at 7–9 (discussing

*Washington Post Co.* and *Arieff*).

Nor did the court "materially misapprehend[]" Plaintiff's evidence in support of his

claimed public interest in the recording.  Recons. Reply at 3.  The court considered Plaintiff's

declaration.  *See* Am. Mem. Op. at 7–8.  It did not find that Plaintiff presented "no facts" to

support the alleged public interest; it found that the facts alleged did not establish "the only

relevant public interest in disclosure" FOIA recognizes— "contribut[ing] significantly to public

understanding of the operations or activities of the government."  *U.S. Dep't of Def. v. Fed. Lab.

Rels. Auth.*, 510 U.S. 487, 495 (1994) (citation omitted); *see* Am. Mem. Op. at 7–8.  Plaintiff

may disagree with the court's conclusion, but accusing the court of an "error of reasoning,"

rather than an error of apprehension, does not constitute a patent misunderstanding of the facts

warranting reconsideration.  *See Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 102

(D.D.C. 2005).  Plaintiff's new declaration does not bridge the gap.  For the reasons explained above, he has not introduced facts to establish that disclosure will serve the public interest. *Supra* at 10–12.

Although Plaintiff describes his last argument as a factual challenge, he takes issue with the court's holding that "ATF has met the 'mere possibility' standard" and largely restates his argument that the court failed to consider controlling decisions.  Mot. for Recons. at 5.  For the reasons above, ATF has shown more than a "mere possibility" of harm with respect to all withheld segments of the recording.  *Supra* at 9.  Plaintiff also argues that ATF has presented "no evidence whatsoever that any of the family members of those who died in this fire incident would object to the release of these audio files," Recons. Reply at 4, but this is a new argument that Plaintiff could have raised prior to the court's earlier decision.  A motion for reconsideration cannot be used "as a vehicle for presenting theories or arguments that could have been advanced earlier."  *Robinson*, 296 F. Supp. 3d at 192–93.  ATF has sufficiently described its justifications for withholding all but the last four minutes and seven seconds of the recording, and Plaintiff's arguments for reconsideration do not alter the court's conclusions.

### IV.    CONCLUSION

For the foregoing reasons, ATF's renewed motion for summary judgment, ECF No. 29, will be GRANTED, and Plaintiff's renewed cross-motion, ECF No. 30, will be DENIED. Plaintiff's motion for reconsideration, ECF No. 32, will likewise be DENIED.  A corresponding order will accompany this memorandum opinion.


Date: February 20, 2024


*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge